UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

PAUL EDWARD CARNEY

CRIMINAL ACTION

NO. 11-18-BAJ-DLD

**RULING ON MOTION TO SUPPRESS**

**I.  BACKGROUND**

Before the Court is a Motion to Suppress (doc. 34) filed on behalf of Paul Edward Carney ("Carney"), defendant in the above-captioned matter. An indictment was filed against the defendant on February 24, 2011, charging him with two counts of possessing counterfeit obligations of the United States, in violation of 18 U.S.C. § 472. (doc. 12)

Officers of the Baton Rouge Police Department ("BRPD") initially came into contact with Carney on December 13, 2010, during the course of an undercover narcotics investigation. BRPD officers obtained consent from Carney to search his residence located at 1640 Olive Street. The search revealed uncut sheets of counterfeit currency totaling $7,715.00.[1] Carney was not arrested, as he agreed to cooperate with law enforcement in relation to the investigation of narcotics activity in the Baton Rouge area. Carney, however, apparently failed to follow through with

---

[1] Criminal Complaint, pp. 4-5 (doc. 1).

1

the agreement with BRPD.

On January 31, 2011, BRPD officers initiated a traffic stop of Carney's vehicle for bearing an altered temporary license plate.[2] Also present in the vehicle at the time of the stop was a passenger, Kelly Barnard.[3] After making contact with both occupants of the vehicle, Officer Jordon Lear instructed Barnard to empty her pockets, and counterfeit currency was discovered. Barnard stated she received the counterfeit currency from the defendant.[4] Carney was placed in the rear seat of a police vehicle, and was subsequently transported by police to his nearby residence. After his arrival, Carney signed a BRPD "Voluntary Consent to Search" form authorizing officers to enter and search the Olive Street residence.[5] A search of the residence revealed $1,240 in counterfeit currency.[6] Following the search, Carney was transported to the local Secret Service field office by the BRPD. Special Agent Ryan Eric Bragg ("Agent Bragg") of the Secret Service presented and explained to Carney a "Warning and Consent to Speak" form containing *Miranda* warnings,

---

[2] Criminal Complaint, pp. 5-6 (doc. 1). During the evidentiary hearing on the motion to suppress, the Government presented physical evidence of the temporary license plate, as well as the testimony of BRPD Officer Jordon Lear, indicating that the temporary plate had been altered to depict a later expiration date. Baton Rouge Municipal Ordinace 11:252 prohibits motorists from operating "any motor vehicle upon the streets of this city unless it has a current and properly displayed license plate in accordance with the laws of this state."

[3] Criminal Complaint, p. 6 (doc. 1)

[4] *Id.*

[5] See, U.S. Exhibit 1.

[6] Criminal Complaint, p. 6 (doc. 1)

which Carney signed.[7] After signing the form, Carney made an oral statement to Special Agent Bragg and Resident Agent in Charge Luis Velez admitting to manufacturing counterfeit currency on or about December 13, 2010, and on or about January 13, 2011.[8]

In his motion, Carney prays for the suppression of "the fruits of the search of the vehicle and its passengers, the residence located at 1640 Olive Street, and the alleged confession." (doc. 34) The Government has filed a memorandum in opposition to Carney's motion to suppress. (doc. 37) The Court conducted an evidentiary hearing on the defendant's motion on August 2, 2011, hearing testimony from Officer Jordon Lear, Officer Nicholas Collins, and Sergeant John Barker of the BRPD, Special Agent Bragg of the Secret Service, the defendant's brother, Michael Carney, as well as the defendant, Paul Carney. The Court also received into evidence a "dash camera" video recording of the stop of Carney's vehicle, the altered temporary license plate found on the vehicle, as well as two consent forms signed by Carney.

At the conclusion of the evidentiary hearing on the motion to suppress, the Court ruled that the initial traffic stop of Carney's vehicle was valid. The Court found, based upon the evidence and testimony presented at the hearing, that the totality of the circumstances surrounding the stop establish that the officers who

---

[7] See, U.S. Exhibit 2.

[8] Criminal Complaint, p. 6 (doc. 1)

3

stopped Carney's vehicle on January 31, 2011 had an objectively reasonable suspicion that there was a present violation of law, namely, that Carney was operating a vehicle with an altered temporary license plate.[9] The Court now addresses the remaining issues raised in the defendant's motion to suppress, which were taken under advisement at the conclusion of the hearing.

## II. LAW AND ANALYSIS

### A. Validity of the consent to search the residence

Carney argues that any evidence obtained from the search of the residence should be suppressed, as the circumstances precluded the defendant from giving voluntary consent to the search. The government maintains that Carney freely and voluntarily consented to the search of his residence by the BRPD.

"It is well established that a search conducted pursuant to consent is excepted from the requirements of both probable cause and a warrant." *United States v. Garcia*, 496 F.2d 670, 673 (5th Cir. 1974). Nevertheless, in order for consent to a warrantless search to be deemed valid, "the government must prove by a preponderance of the evidence that consent was freely and voluntarily given." *U.S. v. Richard*, 994 F.2d 244, 250 (5th Cir. 1995). The United States Supreme Court has instructed that the question of whether consent to a search was voluntary or the product of duress or coercion, either express or implied, is a question of fact

---

[9] "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *U.S. v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

4

to be determined from the totality of all the circumstances. *Scneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047 (1973). The Fifth Circuit has routinely applied six factors in the course of examining the totality of the circumstances: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier–Becerril*, 861 F.2d 424, 426 (5th Cir. 1988). All of the six factors are relevant to the issue of voluntariness, but no single one is dispositive or controlling. *U.S. v. Freeman*, 482 F.3d 829, 832 (5th Cir. 2007); *U.S v. Estrada*, 459 F.3d 627, 634 (5th Cir. 2006).

Applying the Fifth Circuit's six factors to the circumstances of the present case, it is clear that the defendant was in police custody when the consent was given, despite whether he was formally under arrest at the time. Officer Lear testified that the defendant was detained at the location of the stop, and Officer Collins testified that he transported Carney to the defendant's residence.

As to the presence of coercive police procedures, the defendant's motion to suppress alleges that Carney's transportation to the residence in a patrol vehicle, the presence of a high number of officers at the residence, and the officers' alleged entry into the residence prior to Carney giving consent were all coercive procedures employed by the police. The defendant's brother, Michael Carney, testified that he

5

witnessed four to five police vehicles arrive at the residence. However, the defendant testified at the hearing that he did not know whether officers were actually inside of his residence at the time that he arrived with the police. Further, the testimony of both the defendant and Sergeant Barker confirms that Barker alone approached the defendant and asked for consent to search the residence. The defendant testified that Sergeant Barker did not brandish his weapon, nor did he make any threats or promises in order to persuade Carney to sign the consent to search form.

Concerning the defendant's cooperation with police, the testimony presented at the hearing supports the conclusion that the defendant was cooperative with the police, both prior to and throughout the search.[10] With respect to the defendant's awareness of his right to refuse consent, Sergeant Barker testified that he explained to Carney that Carney could consent to the search or that the police would seek a search warrant. Morever, the "Voluntary Consent to Search Form" signed by Carney clearly states the right to refuse consent, as well as the right to revoke consent at any time.[11] Carney testified that he was "confused" during the encounter with the police, but under cross-examination, stated that his confusion arose from the fact that he was not ticketed for the traffic violation, and that his

---

[10] Carney's willingness to cooperate is also evidenced by the previous consent which gave to the police to search the residence on December 13, 2010.

[11] See, U.S. Exhibit 1.

6

passenger, Barnard, was not arrested.

Regarding the defendant's education and intelligence, Carney testified that he is able to read. No other information concerning Carney's educational history was presented during the course evidentiary hearing. However, having observed his demeanor and response to direct and cross examination, the Court notes that Carney appears to fully comprehend his encounter with the police the nature of the current proceedings. Carney confirmed that he has a past criminal history, indicating a familiarity with the criminal justice system.

Finally, in regards to the sixth factor, Carney testified that he did not believe that any incriminating evidence would be found when he consented to the search, although he admitted that counterfeit currency was present in his residence on the previous evening. Carney alleged that Barnard printed counterfeit currency at Carney's residence, and that when she showed it to Carney, he told her that it "wasn't good" and that she should destroy it.

The Court finds that, taken together, the government has satisfied its burden of proof by a preponderance of the evidence that Carney voluntarily consented to the search of his residence by the BRPD on January 31, 2011. Although the defendant was in custody at the time that he consented to search, and considering that there is evidence that a number of law enforcement officers were present at Carney's residence when the consent was given, the weight of the evidence nonetheless establishes that Carney gave consent to search his residence

voluntarily, and that the search was not the product of duress or coercion. Accordingly, because the Court finds the search was conduct on the basis of valid consent, the Court declines to suppress the evidence obtained from the search.

### B. Validity of the waiver of *Miranda* rights prior to confession

Carney seeks suppression of the confession given to Secret Service agents on January 31, 2011, arguing that his consent to questioning was invalid, as it was the result of government action rather than his own free will. The government asserts that Carney made a valid confession to Secret Service agents which should not be suppressed, because there was no violation of the defendant's Fourth Amendment rights.

In the case of *U.S. v. Cardenas*, 410 F.3d 287 (5th Cir. 2005), the Fifth Circuit stated:

> Once adequate warnings have been given, a suspect may knowingly and intelligently waive his *Miranda* rights and agree to answer questions. Thus, although one purpose of the *Miranda* framework is to free courts from deciding the voluntariness of a confession under the totality of the circumstances, a similar task devolves on us to determine the voluntariness of a waiver. A defendant's waiver of his *Miranda* rights is effective only if voluntary. The inquiry whether a valid waiver has occurred has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. The voluntariness determination is made on a case-by-case

8

> basis and is viewed under the totality of the circumstances surrounding the interrogation. A crucial aspect is the presence or absence of coercive behavior on the part of the government.

*Id.* at 292-293, quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Accordingly, the Court must consider whether Carney waived his *Miranda* rights willingly and voluntarily, and also whether he was aware of the nature of his rights and the consequences of the waiver.

Considering the totality of the circumstances as determined by the evidence and testimony presented at the hearing, the Court concludes that Carney knowingly and validly waived his *Miranda* rights prior to making a confession to Special Agent Bragg and Resident Agent in Charge Velez. Special Agent Bragg testified that he informed Carney that he was there to discuss the counterfeit money discovered at Carney's residence. Prior to conducting the interview with Carney, Agent Bragg presented Carney with a "Warning and Consent to Speak" form, which outlined the *Miranda* rights. Agent Bragg testified that he read the rights contained on the form to Carney, and that Carney asked no questions about the form during the course of the interview. Carney testified he did not read the form, but that Bragg read him the rights contained on the form, and that he signed the first portion of the consent form captioned "Warning of Rights." Carney did not sign the second portion of the consent form, captioned "Waiver." Special Agency Bragg testified that Carney did not refuse to sign the "Waiver" portion of the form and that Carney verbally

consented to this waiver. He further testified that Resident Agent Velez went directly into questioning of the defendant after the verbal consent was given, before Carney could sign the second portion of the form. Agent Bragg testified that at no time did Carney invoke his right to counsel during the interview. Most importantly, Carney testified that he understood what he was signing and that he was aware that he could have refused to speak to the agents. Finding that Carney executed a valid and knowing waiver of his *Miranda* rights, the Court declines to suppress the statement given by Carney to the Secret Service agents on January 31, 2011.

## III. ORDER

Accordingly, for the reasons stated herein, the Motion to Suppress (doc. 34), filed by defendant Paul Edward Carney is hereby **DENIED**.

Baton Rouge, Louisiana, August 4, 2011.

_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA